AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern _____ District of _____ New York

On The Move, Inc.,

V.

Trucknology, Inc. a/k/a The Bronx Rental Corp.
and Eugene Greenbaum,

**SUMMONS IN A CIVIL ACTION**

JUDGE BATTS

CASE NUMBER:

## 08 CV 2533

**TO:** (Name and address of Defendant)

Trucknology, Inc., a/k/a The Bronx Truck Rental Corp., 1130 Zerega Ave.
Bronx, N.Y. 10462

Eugene Greenbaum, 275 Kings Point Road, Great Neck, N.Y. 11024

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Stern Tannenbaum & Bell LLP, 380 Lexington Avenue, Suite 3600,
New York, NY 10168

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

MAR 1 3 2008

CLERK

DATE

(By) DEPUTY CLERK

STERN TANNENBAUM & BELL LLP
David S. Tannenbaum (DT 1196)
Dtannenbaum@sterntannenbaum.com
Rosemary Halligan (RH 6650)
Rhalligan@sterntannenbaum.com
380 Lexington Avenue, Suite 3600
New York, NY 10168
(212) 792-8484

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

On The Move, Inc.,

                             Plaintiff,

               v.

Trucknology, Inc. a/k/a The Bronx Truck Rental Corp.
and Eugene Greenbaum,

                        Defendants.

-------------------------------------------------------------- x

_____ Civ. _____

**COMPLAINT**

JUDGE BATTS

08 CV 2533

MAR 13 2008
U.S.D.C. S.D.N.Y.
CASHIERS

       Plaintiff On The Move, Inc. ("OTM"), by and through its attorneys, Stern Tannenbaum &

Bell LLP, as and for its complaint against defendants Trucknology, Inc. a/k/a The Bronx Truck

Rental Corp. ("Trucknology") and Eugene Greenbaum ("Greenbaum") (collectively,

"Defendants"), alleges as follows:

### The Parties

      1.    Plaintiff OTM is a Michigan corporation with its principal place of business

located at 28825 IH 10 West, Boerne, Texas, 78006.

      2.    Upon information and belief, Trucknology is a New York corporation, with its

principal place of business located at 1130 Zerega Avenue, Bronx, New York 10462.  Upon

information and belief, Trucknology has another location at 137 Saw Mill River Road, Yonkers,

New York 10701.

3.     Upon information and belief, Greenbaum is an individual with a residential address located at 275 Kings Point Road, Great Neck, New York 11024.

<u>**Jurisdiction and Venue**</u>

4.     This Court has jurisdiction over this action by virtue of 28 U.S.C. § 1332(a), because the parties are citizens of different States and the amount in controversy exceeds $75,000, exclusive of costs and interest.

5.     Venue is proper in this district under 28 U.S.C. § 1391(a) because defendant Trucknology resides in this district.

<u>**Background**</u>

<u>**The Lease Agreements**</u>

6.     OTM and Trucknology entered into a series of lease agreements ("Lease Agreements" or individually "Lease Agreement") from 2002 through 2006 pursuant to which Trucknology leased from OTM certain motor vehicles, that is, trucks (the "Trucks"), designated and described on Schedule "A" to each Lease Agreement.

7.     OTM is, and was at all times, the owner of the Trucks.

8.     Each Schedule "A" to the Lease Agreements sets forth OTM's account number, a description of each Truck, each Truck's vehicle identification number ("VIN"), and each Truck's salvage, or residual value, the particular lease term, monthly lease payment amount and other details of the particular lease.  A sample copy of a Lease Agreement, including a sample Schedule "A," is attached hereto as Exhibit 1, which contains a sample "Lease Agreement Package" which was executed each time Trucknology leased Trucks.

9.     Greenbaum, executed a personal guarantee (the "Personal Guarantee") with respect to Trucknology's underlying obligations under each of the Lease Agreements.  (A sample

2

copy of the Personal Guarantee is included within the sample Lease Agreement Package at Exhibit 1.)

10.    Under the terms of the Lease Agreements, Trucknology was obligated to pay to OTM lease payments, insurance, license and residual ("LEV") payments, as more particularly described in each Lease Agreement.

11.    Despite proper repeated demand, beginning in or about November 2006, Trucknology and Greenbaum failed to pay certain lease payments as required by the Lease Agreements.

12.    As more fully set forth in the summary of damages (attached hereto as Exhibit 2), past due and unpaid lease payments, as well as past due insurance, license and LEV payments, late fees and expected lease payments and expected LEV payments total approximately $2,874,283.

13.    Trucknology's and Greenbaum's failure to pay the agreed-upon lease payments and other related charges constitutes a material default of each of the Lease Agreements.

14.    As a result of these defaults, OTM provided written notice to Trucknology that it was terminating the Lease Agreements pursuant to Section 13 of the Lease Agreements.

15.    Upon information and belief, Trucknology and Greenbaum entered into a business relationship with a direct competitor of OTM's pursuant to which Trucknology leased approximately 49 new trucks.  Accordingly, not only has Trucknology and Greenbaum breached the Lease Agreements by, *inter alia*, failing to pay OTM the significant sums due and owing thereunder and continuing to wrongfully use the Trucks, but upon information and belief Trucknology and Greenbaum have further maliciously harmed OTM by using monies that should have been paid to OTM to benefit OTM's direct competitor.

3

**Trucknology's and Greenbaum's Wrongful Refusal to Return the Trucks**

16.    Following OTM's termination of the Lease Agreements, it demanded that Trucknology return any Trucks in its possession or control to OTM.

17.    Attached hereto as Exhibit 3 is a spreadsheet specifically identifying the Trucks that remain in Trucknology's possession or control; the spreadsheet contains OTM's account number, a description of each Truck, each Truck's vehicle identification number ("VIN").

18.    Despite its formal demand, Trucknology and Greenbaum, who are presently in possession (or having sub-leased or rented the Trucks to third parties, remain in control) of the Trucks, have failed to return certain of the Trucks to OTM as required under the terms of the Lease Agreements, in further default of the Lease Agreements.

19.    It lies within the power of Trucknology and Greenbaum to conceal, part with or dispose of or transfer the Trucks, or impair their value, during the pendency of this suit.  Given the mobile nature of the Trucks and Trucknology's and Greenbaum's ongoing refusal to return the Trucks, OTM reasonably fears this might be done.  Therefore, an Order of Seizure, Temporary Restraining Order and Preliminary and Permanent Injunction are necessary to protect OTM's rights.

20.    Trucknology has no defense to this action, and in fact, under Section 21 ("Waiver of Defenses") of the Lease Agreements, Trucknology specifically agreed that its "obligations to [OTM] under the terms of this Agreement shall not be subject to any reduction, abatement, defense, counterclaim, set off or recoupment which [Trucknology] may now or hereafter claim against [OTM]."

4

**The Trademark and Tradename License Agreements**

21.    Contemporaneously with the execution of each of the Lease Agreements, Trucknology and Greenbaum entered into a licensing contract with OTM entitled "Trade Mark and Trade Name License Agreement ("Trademark License Agreement"). (A sample copy of a Trademark License Agreement is included within the sample Lease Agreement Package at Exhibit 1.)

22.    The term of each Trademark License Agreement was set to expire at the earlier of four years from the commencement of the particular Lease Agreement, the conclusion of the particular lease, or at the termination of the Lease Agreement. Because the Lease Agreements were terminated, by their terms, the Trademark License Agreements also terminated.

**The Security Agreements**

23.    On the same date of each Lease Agreement, Trucknology and Greenbaum purchased from OTM certain items of movable and intellectual property referred to and more particularly described on the relevant Bills of Sale and Schedule "A" thereto. (A sample copy of a Bill of Sale is included within the Lease Agreement Package at Exhibit 1.)

24.    Specifically, OTM provided Trucknology with the following:

    1. User's Marketing Material Kit
    2. Accounting Ledgers and Journals
    3. Training Materials
    4. Hand Truck
    5. Form Rental Agreements (5 Books)
    6. 12 Protective Blankets
    7. Safety Qualification Forms (1 Pkg. of 125).

25.    To secure the repayment of all of Trucknology's and Greenbaum's indebtedness to OTM, Trucknology and Greenbaum granted OTM a security interest in the movable and intellectual property described on Exhibit "A" to the Bills of Sale, as well as a security interest in

5

the Trucks (the "Collateral"), as set forth in security agreements ("Security Agreements")
included with each Lease Agreement Package.

26.    Each Security Agreement provided that Trucknology and Greenbaum would be in
default under the Security Agreement at the occurrence of any event that would accelerate the
indebtedness of Trucknology and Greenbaum as the secured party under any note, indenture,
agreement or undertaking, and further provided OTM with the right to exercise on the Collateral.

27.    The default of Trucknology and Greenbaum under the Lease Agreements as set
forth above operates as a default ("Default") under section 7 of the relevant Security
Agreements, and therefore OTM has a right possession of the Collateral, in preference and
priority over all other parties.

## AS AND FOR A FIRST CAUSE OF ACTION

### (REPLEVIN)

28.    Plaintiff OTM repeats and realleges the allegations in paragraphs 1 through 27 as
though fully set forth herein.

29.    Plaintiff OTM, as owner and as set forth in the Lease Agreements, a sample of
which is annexed as Exhibit 1, has superior rights in the Trucks which are clearly identified on
the annexed Exhibit 3.

30.    OTM is entitled to possession of the Trucks by virtue of the facts set forth herein,
and Defendants have no defense to this action, but despite proper and repeated demand, is
wrongfully holding certain of the Trucks.

31.    The value of each of the Trucks is as set forth on each respective Schedule A.

32.    During the pendency of this proceeding, OTM will furnish an undertaking,
according to law, in an amount to be fixed by this Court.

33.     OTM is entitled to immediate possession of the Trucks and given its clear superior rights, an Order of Seizure with respect to the Trucks held by Trucknology and Greenbaum should be issued forthwith.

## AS AND FOR A SECOND CAUSE OF ACTION

### (INJUNCTION)

34.     Plaintiff OTM repeats and realleges the allegations in paragraphs 1 through 33 as though fully set forth herein.

35.     By reason of the forgoing, OTM has been irreparably harmed by the Defendants' wrongful refusal to return certain Trucks, and has been forced to incur on-going and unjustified significant costs and expenses, including insuring such Trucks.

36.     Further, given the nature of the chattel and the on-going refusal of Trucknology and Greenbaum to return certain Trucks, OTM reasonably fears that Trucknology and/or Greenbaum will continue to operate, conceal, part with, dispose of or transfer the Trucks, or impair their value, during the pendency of this suit.

37.     In the event the foregoing occurs, based on the facts set forth herein, OTM will have no adequate remedy at law.

38.     OTM is entitled to a preliminary and permanent injunction necessary to protect OTM's rights in the Trucks, and enjoining Trucknology and/or Greenbaum or anyone acting on their behalf from operating, disposing of, removing or transferring the Trucks from New York State, or concealing the Trucks, or impair their value, during the pendency of this action.

## AS AND FOR A THIRD CAUSE OF ACTION

### (CONVERSION)

39.     Plaintiff OTM repeats and realleges the allegations in paragraphs 1 through 38 as though fully set forth herein.

7

40.    The seizure of, and/or failure to return the Trucks constitutes an unlawful possession of OTM's property by Trucknology and/or Greenbaum.

41.    This unlawful possession was taken in conscious disregard of OTM's rights.

42.    Trucknology and/or Greenbaum have converted OTM's property by wrongfully retaining certain Trucks and by failing to return certain Trucks to OTM despite multiple requests. Such actions are unlawful and in contravention of the clear legal rights of OTM.

43.    By reason of the above, OTM is entitled to judgment against Trucknology and/or Greenbaum in an amount equal to, *inter alia,* all past due and unpaid lease, insurance, license and LEV payments, as well as late fees and expected lease payments and expected LEV payments, which total approximately $2,874,283, and the costs of these proceedings, including attorneys' fees, legal interest on the balance due from date of default as to each account, plus any amounts that may come due in connection with and after removal and disposal of the Trucks pursuant to the terms of the Agreements, and punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION

## (BREACH OF CONTRACT -- LEASE AGREEMENTS)

44.    Plaintiff OTM repeats and realleges the allegations in paragraphs 1 through 43 as though fully set forth herein.

45.    OTM has fully performed all of its contractual obligations to Trucknology, including under the Lease Agreements.

46.    Trucknology is in material breach of its obligations under the Lease Agreements entered into with OTM for good and valuable consideration, including, *inter alia,* failing to pay the lease and insurance payments due under each Lease Agreement and failing to return certain Trucks upon termination of the Lease Agreements.

8

47.    OTM has suffered damages as a result of Trucknology's breach, and OTM is entitled to judgment against Trucknology for all amounts due and owing under the Lease Agreements, including but not limited to an amount equal to all past due and unpaid lease, insurance, license and LEV payments, as well as late fees and expected lease payments and expected LEV payments, which total approximately $2,874,283, and the costs of these proceedings, including attorneys' fees, and legal interest on the balance from date of default as to each account.

48.    Trucknology is further indebted to OTM for all amounts that may come due in connection with and after the recovery and disposal of the Trucks pursuant to the terms of the Lease Agreements.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (WILLFUL AND INTENTIONAL BREACH OF CONTRACT -- LEASE AGREEMENTS)

49.    Plaintiff OTM repeats and realleges the allegations in paragraphs 1 through 48 as though fully set forth herein.

50.    The breaches of the Lease Agreements described above constitute willful and intentional breaches of contract for which Trucknology is responsible.

51.    By reason of the above, OTM is entitled to judgment against Trucknology for all amounts due and owing under the Lease Agreements, including but not limited to an amount equal to all amounts due and owing under the Lease Agreements, including but not limited to an amount equal to all past due and unpaid lease, insurance, license and LEV payments, as well as late fees and expected lease payments and expected LEV payments, which total approximately $2,874,283, and the costs of these proceedings, including attorneys' fees, for legal interest on the balance from the date of default as to each account, plus any amounts that may come due in

9

connection with and after the removal and disposal of the Trucks pursuant to the terms of the Agreements, and punitive damages.

## AS AND FOR A SIXTH CAUSE OF ACTION

## (BREACH OF GUARANTEE)

52.    Plaintiff OTM repeats and realleges the allegations in paragraphs 1 through 51 as though fully set forth herein.

53.    OTM has fully performed all of its contractual obligations to Trucknology, including under the Lease Agreements.

54.    Trucknology is in material breach of its obligations under the Lease Agreements, entered into with OTM for good and valuable consideration, including, *inter alia*, paying the lease and insurance amounts due under each Lease Agreement and returning the Trucks upon termination of the Lease Agreements.

55.    Greenbaum has breached his Personal Guarantees by failing to fulfill Trucknology's underlying lease obligations as set forth in each Lease Agreement.

56.    Because Trucknology has materially breached its obligations under the Lease Agreements, OTM is entitled to judgment against Greenbaum as guarantor for Trucknology, for all amounts due and owing under the Lease Agreements, including but not limited to an amount equal to all past due and unpaid lease, insurance, license and LEV payments, as well as late fees and expected lease payments and expected LEV payments, which total approximately $2,874,283, and the costs of these proceedings, including attorneys' fees, and for legal interest on the balance due from the date of default as to each account.

57.    Greenbaum is further indebted to OTM for all amounts that may come due in connection with and after the recovery and disposal of the Trucks pursuant to the terms of the Lease Agreements.

10

## AS AND FOR A SEVENTH CAUSE OF ACTION

### (DECLARATORY JUDGMENT --
### TERMINATION OF TRADE MARK AND
### TRADE NAME LICENSE AGREEMENTS)

58.    Plaintiff OTM repeats and realleges the allegations in paragraphs 1 through 57 as though fully set forth herein.

59.    OTM is entitled to a judgment of this Court declaring each Trademark License Agreement to have been terminated as a result of the default by Trucknology and Greenbaum under the Lease Agreements.

60.    OTM is further entitled to a judgment against Trucknology and Greenbaum for reasonable attorneys' fees, costs and expenses incurred in connection with this cause of action.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

### (DECLARATORY JUDGMENT -- ENFORCEMENT
### OF SECURITY AGREEMENTS)

61.    Plaintiff OTM repeats and realleges the allegations in paragraphs 1 through 60 as though fully set forth herein.

62.    The default of Trucknology and Greenbaum under the Lease Agreements as set out above operates as a default under Section 7 ("Default") of the Security Agreements.

63.    OTM is entitled to a declaration with respect to each Security Agreement that its lien over the Collateral described therein has preference and priority over all persons whomsoever.

11

**WHEREFORE**, based on the foregoing, On The Move, Inc. demands judgment as follows:

(i)    On the First Cause of Action, directing Defendants to return the Trucks over which they have possession and/or control to OTM, and issuing an Order of Seizure commanding the Sheriff for any County in which the Trucks described in Exhibit 3 are located, including but not limited to Bronx County, to seize and take into possession for the benefit of OTM all of those Trucks which Trucknology and Greenbaum are holding;

(ii)    On the Second Cause of Action, granting a preliminary and permanent injunction enjoining Defendants, or anyone acting on their behalf, from operating, disposing of, removing or transferring the Trucks from New York State, or impairing their value, listed and described on Exhibit 3 or concealing the Trucks during the pendency of this action;

(iii)    On the Third Cause of Action, awarding damages to OTM against Trucknology in an amount equal to all amounts due under the Lease Agreements, including but not limited to all past due and unpaid lease, insurance, license and LEV payments, as well as late fees and expected lease payments and expected LEV payments, which total approximately $2,874,283, and all costs of these proceedings, including attorneys' fees, legal interest on the balance due from the date of default as to each account, plus any amounts that may come due in connection with and after the removal and disposal of the Trucks pursuant to the terms of the Agreements, and punitive damages;

(iv)    On the Fourth Cause of Action, awarding damages to OTM against Trucknology in an amount equal to all amounts due under the Lease Agreements, including but not limited to all past due and unpaid lease, insurance, license and LEV payments, as well as late fees and expected lease payments and expected LEV payments, which total approximately $2,874,283, and all costs of these proceedings, including attorneys' fees, legal interest on the balance due

12

from the date of default as to each account, plus any amounts that may come due in connection with and after the removal and disposal of the Trucks pursuant to the terms of the Agreements;

(v)     On the Fifth Cause of Action, awarding damages to OTM against Trucknology in an amount equal to all amounts due under the Lease Agreements, including but not limited to all past due and unpaid lease, insurance, license and LEV payments, as well as late fees and expected lease payments and expected LEV payments, which total approximately $2,874,283, and all costs of these proceedings, including attorneys' fees, legal interest on the balance due from the date of default as to each account, plus any amounts that may come due in connection with and after the removal and disposal of the Trucks pursuant to the terms of the Agreements, and punitive damages;

(vi)    On the Sixth Cause of Action, awarding damages to OTM against Greenbaum, as guarantor for Trucknology, in an amount equal to all amounts due under the Lease Agreements, including but not limited to past due and unpaid lease, insurance, license and LEV payments, as well as late fees and expected lease payments and expected LEV payments, which total approximately $2,874,283, and all costs of these proceedings, including attorneys' fees, legal interest on the balance due from the date of default as to each account, plus all amounts that may come due in connection with and after the removal and disposal of the Trucks pursuant to the terms of the Agreements;

(vii)   On the Seventh Cause of Action, declaring each Trademark License Agreement to have been terminated as a result of the default by Trucknology and Greenbaum under the Lease Agreements, and awarding OTM reasonable attorneys' fees, costs and expenses incurred as a result of the pursuit of this Cause of Action;

13

(viii)   On the Eighth Cause of Action, declaring with respect to each Security

Agreement that OTM's lien over the Collateral described therein has preference and priority over

all persons whomsoever; and

(ix)   Granting OTM such other and further relief as this Court may deem equitable,

just, necessary and proper, including but not limited to attorneys' fees and costs of litigation.


Dated:   New York, New York
         March 13, 2008


                              STERN TANNENBAUM & BELL LLP

                              By: *Rosemary Halligan*
                                   David S. Tannenbaum (DT 1196)
                                   Dtannenbaum@sterntannenbaum.com
                                   Rosemary Halligan (RH 6650)
                                   Rhalligan@sterntannenbaum.com

                                   380 Lexington Avenue
                                   New York, New York 10168
                                   (212) 792-8484
                                   (212) 792-8489 (facsimile)
                                   Attorneys for Plaintiff On The Move, Inc.


TO:   Trucknology, Inc.
      a/k/a The Bronx Truck Rental Corp.
      1130 Zerega Avenue
      Bronx, N.Y.  10462

      Eugene Greenbaum
      275 Kings Point Road
      Great Neck, N.Y. 11024


{00002785.DOC v 6}


14

**EXHIBIT 1**

# ON THE MOVE

**TRUCK LEASING • SALES & RENTALS • INSURANCE • MOVING SERVICES • ELECTRIC VEHICLES**

# LEASE AGREEMENT

## LEASE AGREEMENT
### (TRAC)

Trucknology, Inc. _____ of ___ 137 Saw Mill River Road _____
         (Lessee's name)                                                    (Street address)

Yonkers, NY 10701 _____
                      (City, State & Zip code)

("Lessee"), a New York Corporation _____, hereby leases from On The Move, Inc., a Michigan corporation ("Lessor"), and Lessor hereby leases to Lessee the vehicle(s) ("Vehicle") designated and described in Schedule A hereto for use in lease service upon the following terms and conditions:

1. **Usage; License Agreement.** All Vehicles shall be leased by Lessor for use in Lessee's business in accordance with all applicable governmental and insurer requirements and limitations. All Vehicles shall be inspected, prepared and equipped by Lessee in a manner approved by Lessor. No Vehicle shall be removed from the United States without the prior written consent of the Lessor. All vehicles leased by Lessee shall be subject to the License Agreement between Lessee and On The Move, Inc., the terms and conditions of which are hereby incorporated by reference.

2. **Term.** The term of lease shall be designated Schedule A attached hereto.

3. **Lease Charge.** The monthly charge for each Vehicle shall be set forth in Schedule A. Lessee shall pay the monthly lease charge to Lessor for each Vehicle in the amounts and on the dates set forth in Schedule A. In the event any monthly or other lease charges hereunder are not paid promptly when due, Lessee shall pay to Lessor, as an additional lease charge, interest on such overdue payment from the due date of such payment at a rate equal to the lesser of 15% per annum or the maximum rate permitted by applicable law.

4. **Registration and Taxes.** Lessee shall, at Lessee's own expense, register, title and license each Vehicle in the manner prescribed by Lessor so as to maintain Lessor's ownership and insurable interest in the Vehicle and forward such title to Lessor as directed in Schedule A. Lessee shall provide to Lessor any documentation pertaining to a Vehicle as Lessor may from time to time request. Lessee shall be responsible for determining taxes due and shall pay all taxes and other charges and expenses whatsoever with respect to each Vehicle, and file all reports attendant thereto.

5. **Operating Expenses, Modifications.** (a) Lessee shall pay, or provide for the payment of, all operating expenses of each Vehicle, including without limitation, gasoline, oil, grease, antifreeze, adjustments and repairs (except those covered under the manufacturer's warranty and policy adjustments), and storage, fines, towing and service. (b) Lessee shall not make any additions, alterations or modifications to any Vehicle, provided, however, that Lessee may make additions to a Vehicle with Lessor's prior written consent and such additions are readily removable without any damage to the Vehicle. Any dealer installed modifications, alterations or additions, the cost of which are included in the Capitalized Cost of the Vehicle, shall be the property of the Lessor.

6. **Risk of Loss, Maintenance and Inspection.** Lessee shall bear, and indemnify Lessor against any damage, loss, theft or destruction of each Vehicle and shall maintain and repair each Vehicle in accordance with manufacturer requirements and recommendations. Lessee shall permit Lessor to inspect each Vehicle from time to time at reasonable intervals.

7. **Insurance.** During the lease term, every vehicle shall be insured under an arrangement with and subject to the terms of Lessor's Agreement with _ National Insurance Specialists _____, with coverage and amounts as required under applicable state law for the driver of the vehicle. Lessor and lienholder must be named additional insured for five million dollars liability coverage on the policy. All such insurance shall protect Lessor, Lessee, and any person leasing or driving the Vehicle with valid permission. If any claim is made or action commenced for personal injury, death or property damage in connection with any Vehicle, Lessee shall promptly notify Lessor, any other person known to have an interest in the Vehicle and the insurance carrier thereof and furnish each of them with a copy of each process and pleading received in connection therewith and diligently defend against such claim or action and/or cooperated in the defence thereof. Lessee shall promptly furnish to the insurance carrier a report of any accident involving a Vehicle on the form furnished by such carrier. You must use "On The Move" rental forms and safety qualification records for each rental.

All insurance coverage is subject to the terms of this lease and the underlying License Agreement with On The Move, Inc. Failure to abide by the terms of either Agreement will be cause for termination of insurance coverage, at the option of Lessor and/or __ National Insurance Specialists _____.

Page 1

-2-

8. **Performance by Lessor.** If Lessee shall fail for any reason to perform any provision hereof to be performed by Lessee, Lessor may (but shall not be obligated to) perform the same without relieving Lessee of its obligation in respect thereof and Lessee shall reimburse Lessor upon demand for any costs and expenses incurred by Lessor in connection with such performance.

9. **Indemnity.** Lessee shall indemnify and hold Lessor, its agents and employees, harmless against any and all losses, claims, damages or expenses (including attorneys' fees) connected with or arising out of the use, condition (including, without limitation, defects, whether or not discoverable by Lessor or Lessee) or operation of any Vehicle. Lessee shall promptly notify Lessor of any such claim.

10. **Return of Vehicle.** Upon the expiration or termination of the lease of any Vehicle, Lessee shall provide written notice thereof to Lessor and shall return such Vehicle to Lessor at the location to which it was originally delivered or at a location otherwise agreed to by Lessor and Lessee. At Lessor's request and on behalf of Lessor, Lessee shall store any Vehicle for a period not to exceed 30 days at Lessee's own expense, other than for insurance coverage, which shall be provided by Lessor.

11. **Expiration of Lease.** Upon the expiration of the lease of any Vehicle hereunder.
    (a) Lessor may, at its option, sell such Vehicle in an arm's length transaction within 30 days after expiration of the lease thereof or may appoint Lessee as Lessor's agent to sell such Vehicle on Lessor's behalf. The sale may be public or private and with or without notice to the Lessee, shall be at wholesale, and shall be only for cash payable in full upon delivery of the Vehicle and its title papers to the purchaser. Any such sale shall be on an "AS IS, WHERE IS" BASIS WITH NO RECOURSE OR WARRANTY BY LESSOR. Lessee will not be entitled to any compensation for serving as Lessor's agent in connection with such sale. If Lessee, as Lessor's agent, sells the Vehicle, Lessee shall remit to Lessor the sale price of such Vehicle, any monthly or other lease charges for such Vehicle due under this Agreement and any lease charges as specified below.
    (b) If the Net Proceeds of such sale are less than the Assumed Residual for such Vehicle, Lessee shall pay the deficiency as additional lease charges to Lessor. If the Net Proceeds of such sale exceed the Assumed Residual for such Vehicle, Lessor shall pay or credit the excess to Lessee as a refund of lease charges. For purposes of the Agreement, (i) "Net Proceeds" shall mean the amount received on the sale of a Vehicle less all expenses incurred by lessor in selling the Vehicle and all debts incurred by Lessee which, if no paid, might constitute a lien on the Vehicle or a liability of Lessor, and (ii) "Assumed Residual" shall mean the assumed residual for such Vehicle as expressed as a percentage of Capitalized Cost as set forth in Schedule A.

12. **Loss of Vehicle.** In the event that the Vehicle suffers a total loss or is stolen prior to the end of its lease term, Lessee shall pay the monthly lease charge for the month in which such loss or theft occurs and the applicable early termination value ("Early Termination Value") for such Vehicle determined by Lessor at the commencement of the lease for such Vehicle in accordance with Lessor's procedures with respect thereto in effect at such time and set forth in a statement corresponding to such month provided to Lessee by Lessor. Such statements will be provided to Lessee each month during the term of the Lease of such Vehicle. To the extent of payment by the Lessee pursuant to this paragraph, any insurance proceeds shall be for the account of Lessee.

13. **Termination.** (a) Lessor may terminate this Agreement at any time with respect to any Vehicle(s) by written notice to Lessee upon the occurrence of any of the following events of default: (i) failure to pay any monthly lease charge or any other sum payable to Lessor hereunder, or (ii) failure or refusal by Lessee to perform any other provision hereof to be performed by Lessee, or (iii) the filing of any petition by or against Lessee under any bankruptcy or insolvency law or the making by Lessee of any assignment for the benefit of creditors or the appointment of any trustee or receiver for all or any part of Lessee's business or assets or the assignment (voluntary or involuntary) of Lessee's interest in any Vehicle or the attachment of any lien or levy on any Vehicle (unless such petition, assignment, appointment, or attachment is withdrawn or nullified within two days). Upon termination, the Vehicle(s) shall be delivered to Lessor as provided in Paragraph 10 hereof, and Lessee shall be responsible for any additional lease charges calculated in accordance with Paragraph 14 hereof. If Lessee fails to return the Vehicle(s), Lessor may repossess the same at any time wherever the same may be located and may enter upon the premises of Lessee for the purpose of repossessing the Vehicle(s), and shall hold free and clear of this Lease Agreement and any rights of Lessee therein.
    (b) Upon notice to Lessee, which shall be effective upon receipt thereof, Lessor may at any time, at its sole discretion, terminate Lessee's right to lease additional Vehicles under this Agreement.

Page 2

-3-

14. **Early Termination of Lease.** Lessee may terminate the lease of any Vehicle prior to the expiration of the lease term by giving Lessor 30 days prior written notice of its election to terminate such lease. The effective date of such termination shall be determined in accordance with this Paragraph 14, and the lease of such Vehicle shall terminate upon Lessee paying to Lessor the applicable Early Termination Value for such Vehicle, plus any monthly or other lease charges due and owing to the date of termination.

15. **Force Majeure; No Consequential Damages.** Lessor shall not be liable for any failure or delay in delivering any Vehicle ordered for lease pursuant to this Agreement, or for any failure to perform any provision thereof, resulting from fire or other casualty, riot, strike or other labor difficulty, governmental regulation or restriction, or any other cause beyond Lessor's control. IN NO EVENT SHALL LESSOR BE LIABLE FOR ANY INCONVENIENCES, LOSS OR PROFITS OR ANY OTHER CONSEQUENTIAL, INCIDENTAL OR SPECIAL DAMAGES RESULTING FROM ANY DEFECT OR ANY THEFT, DAMAGE, LOSS OR FAILURE OF ANY VEHICLE. AND THERE SHALL BE NO ABATEMENT OR SET-OFF OF MONTHLY LEASE CHARGES BECAUSE OF SAME.

16. **Assignment, Subordination and Sublease.** (a) Lessor may assign this lease and any and all rentals or other sums payable by Lessee hereunder. Upon notice of such assignment, Lessee shall pay such sums to the assignee without offset, counterclaim or defense of any kind. Lessor may also execute any type of security instrument with respect to any vehicle and Lessee's rights with respect to such vehicle shall be subordinate to the rights of the hold of such instrument.

(b) Neither this Agreement nor any right hereunder may be assigned by Lessee, in whole or in part, without the prior written consent of Lessor. Lessee will not, without the prior written consent of Lessor, sublease or otherwise deliver, transfer or relinquish possession of a Vehicle. If Lessor so consents to a sublease of a Vehicle, (i) the term of such sublease (including any renewal term) shall not extend beyond the term of lease for such Vehicle provided herein, (ii) such sublease shall prohibit any further subleasing by sublessee, (iii) such sublease shall provide that the rights of any sublessee thereunder shall be subject and subordinate to the terms of this Agreement and rights and interests of Lessor in such Vehicle, including, without limitation, the right of Lessor to repossess such Vehicle and to avoid such sublease upon any repossession, (iv) Lessee shall remain primarily liable hereunder for the performance of all the terms of this Agreement to the same extent as if such sublease had not occurred, (v) such sublease shall contain appropriate provisions for the maintenance and insurance of such Vehicle, (vi) such sublease shall provide that it is assigned to Lessor for security purposes and (vii) such sublease shall provide that Lessor shall be permitted to proceed directly against the sublessee to enforce the sublessee's obligations thereunder. The review or approval of a sublease agreement shall not constitute a waiver of any of the foregoing conditions or an acknowledgment that any of such conditions have been met.

17. **No Warranties.** LESSEE ACKNOWLEDGES THAT LESSOR IS NOT THE MANUFACTURER, THE AGENT OF THE MANUFACTURER, OR THE DISTRIBUTOR OF THE VEHICLES LEASED HEREUNDER. LESSOR MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE FITNESS, SAFENESS, DESIGN, MERCHANTABILITY, CONDITION, QUALITY, CAPACITY OR WORKMANSHIP OF THE VEHICLES NOR ANY WARRANTY THAT THE VEHICLES WILL SATISFY THE REQUIREMENTS OF ANY LAW OR ANY CONTRACT SPECIFICATION, AND AS BETWEEN LESSOR AND LESSEE, LESSEE AGREES TO BEAR ALL SUCH RISKS AT ITS SOLE RISK AND EXPENSE. LESSEE SPECIFICALLY WAIVES ALL RIGHTS TO MAKE A CLAIM AGAINST LESSOR AND ANY VEHICLE FOR BREACH OF ANY WARRANTY OR ANY KIND WHATSOEVER AND AS TO LESSOR, LESSEE LEASES THE VEHICLE "AS IS". IN NO EVENT SHALL LESSOR BE LIABLE FOR SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, WHATSOEVER OR HOWSOEVER CAUSED.

18. **Notices.** Any notice required or permitted by this Agreement shall be in writing and given by personal delivery or sent by United States mail, or overnight courier service, postage prepaid, addressed to the intended recipient.

19. **No Implied Waivers.** The waiver by either party of, or failure to claim, a breach of any provision of this Agreement shall not be deemed to be a waiver of any subsequent breach or to affect in any way the effectiveness of such provision.

20. **Miscellaneous.** This Agreement shall constitute the entire agreement between the parties and may not be changed except by an instrument in writing, signed by the party against whom the change is to be enforced. This Agreement is a Michigan agreement and shall be governed by and construed in accordance with the laws of the State of Michigan. In the event that any court determines that this Lease Agreement is not a lease, then Lessee hereby grants to Lessor a security interest in the Vehicle(s) together with all accessions, replacements and substitutions thereto or therefor and the proceeds thereof.

Page 3

-4-

21. Waiver of Defenses.  Lessee's obligations to Lessor under the terms of this Agreement shall not be subject to any reduction, abatement, defease, counterclaim, set off or recoupment which Lessee may now or hereafter claim against Lessor.

22. Federal Income Tax Indemnity.  In determining its Federal income tax liability, Lessor expects to claim with respect to each Vehicle leased hereunder a deduction for accelerated cost recovery provided in Section 168 of the Internal Revenue Code of 1986, as amended.  If Lessor loses this tax benefit or is subject to recapture of this tax benefit as a result of an omission, or misrepresentation of Lessee or any sublessee, Lessee shall pay Lessor an amount which, after deduction of any Federal income tax applicable thereto, is sufficient to reimburse Lessor for the Loss of this tax benefit, plus the amount of any interest or penalties with respect thereto, within 30 days after written notice by Lessor to Lessee of a loss or disallowance of the tax benefit or 30 days prior to the time Lessor pays the additional tax, interest, and penalties, whichever occurs later.  This indemnity shall be refunded to the extent that Lessor realizes a Federal income tax benefit as a result of an event which has given rise to an indemnity payment.  In dealing with the Internal Revenue Service concerning a matter which may give rise to an indemnity payment under this paragraph, Lessor shall use reasonable efforts to make payment of the indemnity unnecessary, and, at Lessee's expense, shall exhaust such administrative remedies available as Lessor shall deem reasonable and necessary.  Lessee's sole remedy for Lessor's failure to comply with the preceding sentence shall be relief from the indemnity required by this paragraph.

23. Inspection:  Financial Statements.  During normal business hours, Lessor and its authorized representatives may inspect each Vehicle leased hereunder and the books and records of the Lessee relative thereto.  Lessor shall have no duty to make any such inspection and shall not incur any liability or obligation by reason of making or not making such inspection.  In addition, upon Lessor's request, Lessee shall furnish any financial statements of Lessee, including, without limitation, balance sheets and income statements.

24. Agreement of Leasing Only.  This Agreement is one of Leasing only and Lessee shall not have or acquire any right, title or interest in any vehicle except the right to use the same as provided in this Agreement.


IN WITNESS WHEREOF, the parties have duly executed this agreement this _____ 15th _____ day of  October _____, 2002.


LESSOR:                                          LESSEE:
On The Move, Inc.                                Trucknology, Inc., a New York Corporation


By _____                      By: _____
Kirk W. Nash

Title: President _____                Title: _____

Trademark and Trade Name License Agreement

This Agreement is made on this, the ____15th____ day of ____October_____, 2002,     by and between On The Move, Inc., a Michigan Corporation, (hereafter referred to at "Licensor") and __Trucknology, Inc._____ , a New York Corporation ____ (hereafter referred to as "Licensee").

Statement of Purpose

Licensor is engaged in the business of leasing vehicles for rental in various industries for the purpose of advertising and promoting such industries. In connection with this purpose, the Licensor has developed, package and leased a substantial number of vehicles involving the use of certain trademarks incorporating its name and other promotional materials. Licensee desires to lease such a vehicle and promotional materials for the purpose of advertising its own business, and to use certain of Licensor's trademarks and trade names in connection with such advertising and promotion. Licensor is willing to permit Licensee to use such name and trademarks under the terms and conditions of this Agreement.

Now, Therefore, in consideration of the mutual promises contained in this Agreement, Licensor and Licensee agree as follows:

1. Definitions. As used in this Agreement, the following terms have the following meanings:

    a. "Advertising materials" means all of Licensor's advertising, promotional items, packaging, labeling, graphics and any other material depicting the name or trademarks of the Licensor.
    b. "Vehicles" are trucks leased to the Licensee which incorporate or use the name, Advertising Materials or trademarks.
    c. "Characters" means the names and likenesses of all characters, designs and logos or any graphical representation thereof, which are now or in the future will be included in the Advertising Materials of the Licensor.
    d. "Trademarks" means all trademark, trade name and service mark rights owned by the Licensee, if any, in the names and the likenesses of the characters, and the name, "On The Move" or any variation thereof, as well as any copyrighted materials included as part of the Licensor's Advertising Materials.

2. Grant of License. Licensor hereby grants to Licensee a non-exclusive license under the terms and conditions of this Agreement to use the Trademarks in connection with the Advertising Materials, intended for use in the advertisement and promotion of the Licensee's business and the promotion of the industry in general. The Licensee may use the Vehicle and Advertising Materials in any way, and may rent the vehicle at such rates and in such way as the Licensee deems best. The License granted hereunder is expressly limited to the vehicle described and identified in Schedule A.

3. Location of the License. The license granted to Licensee hereunder is limited to use of the Trademarks at or in the vicinity of the Licensee's place of business in Yonkers, NY _____, and the Licensee does not have the right to use the Trademarks in any other area, and specifically does not have the right to use the Trademarks in another state or country, without the prior express written consent of the Licensor.

4. Term of the License. The initial term of the license shall commence on the date hereof and terminate in four years or at the conclusion of the lease or leaseback of the referenced Vehicle VIN 1FDWE35L72HB27926, 1FDWE35L92HB27927 & 1FDWE35L02HB27928____. The license may be extended for additional twelve month periods by annual payments of Ninety Dollars. This entitles the licensee continued access to our insurance (disregard the aforementioned annual fee if insurance is uninterrupted) program, continued access to our products, continued permission to use our collateral material, an ongoing subscription to our Newsletter and finally a prerequisite to a "Moving Services License". Non-payment of the renewal statement severs the licensing agreement.

5. Books of Account and Other Records. Licensee shall keep accurate books of account and all documents and other material relating to this Agreement at Licensee's principle office at all times during the initial term of this Agreement and all renewal terms, and for two years thereafter. Upon reasonable notice, the Licensor or its authorized representatives shall have the right to examine and make copies of such books, documents and other materials during regular business hours. Such right shall continue for so long as this Agreement is in effect and for a period of two years thereafter.

Page 6

-2-

6. <u>Licensee's Obligations.</u>  The Licensee warrants that:

    a.  Licensee will maintain each vehicle in good mechanical repair and operating condition in all respects, furnish at its expense all oils and lubricants necessary for the operation of such vehicle, as well as tires and antifreeze/coolant, and assume full responsibility for the performance of such obligation.

    b.  Licensee will, in the event that any vehicle becomes disabled, repair or cause the same to be repaired;

    c.  In the event that Licensee and Licensor agree that it is impracticable or inexpedient for Licensee to repair any disabled vehicle, the Licensee shall continue to make any payments due on such vehicle, but another vehicle may be substituted therefore by the Licensor, upon such terms and conditions as the parties will agree; Provided, However, that the Licensor shall not in any event be liable to the Licensee for any loss of business or any other damage caused by any interruption in the availability of the vehicle;

    d.  Licensee will inspect or cause each vehicle to be inspected from time to time, but at least once every month, to ensure that the vehicle is in proper mechanical condition;

    e.  Licensee will comply with all federal, state and local laws and regulations regarding the maintenance, inspection and repair of the vehicle;

    f.  Licensee will maintain the vehicle and the Advertising Materials to ensure they are visibly clean and free from any dirt, debris or unpleasant odors;

    g.  Licensee has the full corporate power and authority to enter into this Agreement and to perform its obligations hereunder, and that all necessary corporate approvals for this Agreement have been obtained; and

    h.  Licensee will not alter or modify the Advertising Materials in any way.

7. <u>Licensor's Obligations.</u>  Licensor will provide a package of promotional materials, a form Rental Agreement, membership application materials for applicable trade associations, a bookkeeping system, vehicle depreciation schedules and other materials designed to assist Licensee in promoting and advertising its business.

8. <u>Licensor Warranties.</u>

    a.  Licensee understands and agrees that Licensor has made no representations whatsoever regarding Licensor's ownership of the Trademarks, its rights to use the Trademarks, whether or not Licensor's or Licensee's use of the Trademarks will infringe on the rights of any other person or entity, or whether the Licensor has the right to grant to Licensee the right to use the Trademarks.  Licensor has engaged trademark counsel to undertake a search to determine whether the Trademarks infringe on the rights of any other person or entity, and intends at the present time to register the Trademarks should it be determined that the Trademarks are registrable.  However, Licensor makes no representations that it will in fact register the Trademarks or that the results of such search will be favorable.  Licensor hereby disclaims, and Licensee hereby releases Licensor from any all liability in connection with any claims of infringement in any way connected with Licensee's use of the Trademarks.

    b.  Licensor represents and warrants that it has the full corporate power and authority to enter into this Agreement and to perform its obligations hereunder, and that all necessary corporate approvals for this Agreement have been obtained.

    c.  Licensor makes no representations or warranties with respect to the vehicle, and in particular makes no warranties with respect to merchantability or fitness for any particular purpose.  Licensee hereby releases Licensor from any and all liability in connection with the vehicle, including, but not limited to, items not covered by the manufacturer's warranty on the vehicle, product liability with respect to the vehicle, and insurance coverage.

9. <u>Additional Advertising.</u>  With respect to advertising or promotional materials not previously approved by Licensor, Licensee agrees that Licensor shall have the right to approve both the concept of, and all art or printed work incorporated within or to appear upon the vehicle.  If Licensee fails to give notice of approval or disapproval within ten business days of any Advertising Material submitted to it by Licensee, then such Advertising Material shall be deemed approved.  Licensor shall also notify Licensee of the appropriate Trademark notices for the Advertising Materials, which notices shall be permanently affixed to the Advertising Materials.

10. <u>Rights in the Licensed Property.</u>  Licensee recognizes there is a great value to Licensor in the Trademarks and the goodwill associated therewith and that nothing in this Agreement gives Licensee any interest or property rights in the Trademarks, except the right to use the same as specifically set forth in this Agreement.  Licensee shall not, during the period of this Agreement or thereafter, directly or indirectly, assert any interest or property rights in any of the licensed properties.

Page 7

-3-

11. **Proprietary Notices.** To preserve Licensor's rights in the Trademarks, Licensee shall, as Licensor may direct from time to time, affix to all Advertising Materials appropriate trademark or other proprietary notices necessary or advisable to protect Licensor's rights in the Trademarks.

12. **Third Party Infringers.** If Licensee becomes aware that a third party is or may be making unauthorized use of any of the Trademarks, Licensee shall promptly give Licensor written notice thereof, which notice shall fully describe the potentially infringing actions by such third party. Licensee shall not take any other action regarding the infringement or possible infringement without the Licensor's written approval. Licensee shall cooperate with the Licensor (at no out-of-pocket expense to Licensee), in connection with any action to terminate infringements. With respect to all claims, suits and proceedings, including suits in which Licensee is joined as a plaintiff, Licensor shall have the sole right to employ counsel and to direct the handling of the claim and litigation and the settlement thereof; provided that if the alleged infringer asserts any claim against Licensee, Licensee shall have the sole right to employ counsel and direct the handling and litigation of such claim against Licensee, and the settlement thereof. Unless the parties otherwise agree, money damages recovered for any infringement shall be applied first towards repayment of the expenses incurred by Licensor in bringing and maintaining the action or otherwise terminating the infringement, including, without limitation: 1) sums paid by Licensor to Licensee on account of Licensee's out-of-pocket expenses, and 2) reasonable attorney's fees of Licensor and Licensee, with the balance going to the Licensor.

13. **Adoption of Marks.** Licensee shall not, during the term of the license granted by this Agreement or thereafter, adopt, use, register, or attempt to register, as the case may be, any trademark, service mark, trade name or corporate name, copyright, or any part thereof, any of the Characters or Trademarks, or any term or translation meaning the same thing as any of the foregoing to any word, symbol, picture, or combination thereof which might be confusingly similar to the foregoing.

14. **Reservation of Rights to Licensor.** All ownership, right, title and interest in and to the Trademarks and Licensor's trade and corporate names are retained by Licensor for its own use, other than the specific rights granted to the Licensee hereunder.

15. **Indemnification by Licensee.** Licensee shall defend, indemnify and hold Licensor harmless from any and all claims, liabilities, judgments, penalties, losses, costs, damages and expenses (including reasonable attorney's fees, whether or not litigation is commenced) suffered or incurred by Licensor, directly or indirectly, by reason of any breach by Licensee of its obligations, warranties or representations under this Agreement or by any claim arising out of Licensee's business, other than those attributable solely to negligent or intentional actions of Licensor. As used herein, the terms "Licensee and Licensor" also include each party's officers, directors, agents, employees, assigns, successors, representatives, subsidiaries, affiliates and parents.

16. **Participation, Notice and Cooperation.** Each party shall have the right, but not the obligation, to participate, at its expense, in any suit instituted against the other with respect to the subject matter of this Agreement. Each party shall cooperate in good faith with the other party in the defense of any such suit, and each party shall keep the other party fully informed with respect to the progress of any such suits in which the other party is not participating.

17. **Termination Upon Notice.** If either party breaches the terms or provisions of this Agreement, the injured party shall have the right to terminate this Agreement upon the failure of the breaching party to cure the breach within thirty days after receipt of a written notice from the other party specifying the particulars of the breach.

18. **Insolvency of Licensee.** If Licensee becomes insolvent, makes an assignment for the benefit of its creditors, is placed in the hands of a receiver or liquidates its business, or if any distress sale, execution or attachment is levied on its assets, and the same remains undischarged for a period of thirty days, then in any case, Licensor shall have the right, if it so elects, to terminate the license granted by this Agreement by giving written notice of such action to the Licensee, its receivers, trustees, assignees or other representatives. Termination of the license shall be without prejudice to any rights or claims which either party may otherwise have against the other.

19. **Obligations of Licensee Upon Termination.** Upon the expiration or earlier termination of the license granted by this Agreement, Licensee shall discontinue using the Trademarks and shall terminate any and all activities involving the use of the Advertising Materials, and shall further discontinue any use of the name "On The Move".

Page 8

-4-

20. No Joint Venture or Franchise.  Nothing in this Agreement shall be construed to make the parties hereto agents of each other, partners or joint venturers, or to permit either party to bind the other to any agreement.  In addition, Licensee specifically acknowledges that the relationship created by this Agreement between Licensor and Licensee is not, and is not intended by either party to be that of a franchisor and franchisee, it being acknowledged that Licensor is not entitled to exercise any control over the business of the Licensee other than as provided elsewhere in this Agreement.

21. Notices and Other Communications.  Every notice or other communication required or contemplated by this Agreement by either party shall be delivered either by personal delivery or by certified mail (postage prepaid, return receipt requested), addressed to the parties at the following addresses:

Licensor:        On The Move, Inc.
                 Kirk W. Nash
                 29620 I H 10 West
                 Boerne, TX  78006

Licensee:        Trucknology, Inc.
                 137 Saw Mill River Road
                 Yonkers, NY  10701

or at such other address as previously designated.  Notice by certified mail shall be effective on the date it is officially recorded as delivered to the intended recipient by return receipt or equivalent, and in the absence of such record of delivery, the effective date shall be presumed to be the fifth business day after it was deposited in the mail.

22. Surveys.  The Licensee agrees to assist the Licensor or the applicable trade associations by completing marketing survey forms which may be sent out from time to time.  This information, which will be made public, will permit Licensor to monitor the relative success of various marketing strategies and enable Licensor to better assist Licensee in best using the Advertising Materials for promotional purposes.

23. Severability.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of any provision of this Agreement should be invalid under applicable law, such provision or portion of such provision shall be deemed ineffective only to the extent of such invalidity without the reminder of such provision or the remaining provisions of this Agreement.

24. Subject Headings.  The subject headings of this Agreement are included for purposes of convenience only, and shall not affect the construction or interpretation of any of its provisions.

25. Further Assistance.  The parties shall each perform such acts, execute and deliver such instruments and documents, and take such other action as may be reasonably necessary to accomplish the transactions contemplated by this Agreement.

26. Choice of Law.  The validity, construction and enforceability of this Agreement shall be governed in all respects by the laws of the State of Michigan.

27. Integration of Agreements.  This Agreement sets forth the entire understanding of the parties and supersedes all prior and contemporaneous agreements relating to the subject matter contained herein.  Neither party shall be bound by any definitions, condition, representation, warranty, covenant or provision other than as expressly stated or contemplated by this Agreement.

28. Assignability.  Neither this Agreement nor any right or obligation hereunder is assignable in whole or in party by the Licensee, whether by operation of law or otherwise, without the express written consent of the Licensor and any attempted assignment in the absence of such consent shall be void.

29. No Waiver of Rights.  All waivers hereunder must be made in writing, and failure at any time to require the other party's performance of any obligation under this Agreement shall not affect the right subsequently to require performance of that obligation.

Page 9

-5-

30. Attorney's Fees. If any action or proceeding shall be commenced to enforce this Agreement or any right arising in connection with this Agreement, the prevailing party in such action or proceeding shall be entitled to recover from the other party the reasonable attorney's fees, costs and expenses incurred by such prevailing party in connection with such action or proceeding.

31. Counterparts. This Agreement may be executed in any number of counterparts, each of which shall constitute and have the effect of an original instrument.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

LICENSOR:

ON THE MOVE, INC., a Michigan Corporation

BY: _____
Kirk W. Nash, its President

LICENSEE:
Trucknology, Inc., a New York Corporation

BY: _____
                              ,Its

Drafted by:
James P. Frederick
Frederick & Frederick, P.C.
15557 Levan Road
Livonia, MI 48154
(313) 464-2232

Page 10

## BILL OF SALE

1    Sale of Materials.  Seller assigns, sells, transfers, conveys and delivers to buyer on the Effective Date all Seller's right, title and interest in the Materials more fully described on Schedule A.

2.    Payment.  The Materials described hereunder are sold for a valuable consideration, the receipt of which is hereby acknowledged and confirmed.

3.    Representations and Warranties of Seller.  Seller has good and marketable title to the Materials set forth in Schedule A, subject to no liens, mortgages, pledges, security interests, encumbrances or charges of any kind.

4.    Copyrights, Trade Names and Trademarks.  Seller owns and has copyrights and trademarks in the Materials sold hereunder.  Seller's rights with respect to these additional materials are set out more fully in a certain Trademark and Trade name License Agreement executed by the parties hereto on or about the date of this Bill of Sale.  Seller has no knowledge of any proceedings that challenge its interests in the said materials, or of any infringement resulting from their use.

5.    Disclaimer of Additional Warranties.  No representations or statements have been made by Seller concerning the Materials except as stated in this Bill of Sale.  SELLER EXPRESSLY DISCLAIMS ALL WARRANTIES IN CONNECTION WITH THE MATERIALS, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, EXCEPT AS EXPRESSLY SET FORTH IN THIS BILL OF SALE.  The Rental Agreement included with the Materials was drafted under Michigan law and Seller expressly disclaims knowledge of and responsibility for differences of laws in other jurisdictions.

6.    Survival of Covenants, Warranties and Representations.  All representations, warranties, covenants and agreements of each of the parties to this Agreement shall survive the consummation of the transaction contemplated herein and shall not be affected by any investigation by or on behalf of the other parties to this Agreement.

7.    Sales Tax.  Any sales tax payable by reason of the transfer and conveyance of the Truck under this Agreement shall be paid by Buyer.

8.    Schedules.  The attached schedule shall be construed as an integral part of this Bill of Sale.

DELIVERED THIS   15th        DAY OF    October                    , 2002, AT
  Yonkers, NY              .


SELLER:                                          BUYER:

ON THE MOVE, INC., a Michigan Corporation        Trucknology, Inc., a New York Corporation

BY:                                              BY:
Kirk W. Nash, its President                          its

Page 11

## SCHEDULE A

The following is a list of items sold hereunder in connection with the sale of a Truck to the Buyer as of the date above first written:

1. User's Marketing Material Kit

2. Accounting Ledgers and Journals

3. Training Materials

4. Hand Truck

5. Form Rental Agreements (5 Books)

6. 12 Protective Blankets

7. Safety Qualification Forms (1 Pkg. of 125)

Page 12

## SECURITY AGREEMENT

The undersigned (hereafter referred to as the "Borrower") hereby grants to On The Move, Inc.., a Michigan Corporation (hereafter referred to as "Secured Party"), a security interest in the Collateral indicated on attached Exhibit A, to secure the payment of all of Borrower's indebtedness (hereafter referred to as "Liabilities") to the Secured Party arising out of the Borrower's purchase of the collateral from the Secured Party under a certain Purchase and Sale Agreement of even date. Liabilities shall also include all interest, costs, expenses and attorney's fees accruing to or incurred by the Secured Party in collecting the Liabilities or in the protection, maintenance or liquidation of the Collateral.

<u>Warranties.</u>  Borrower warrants to the Secured Party that:

1.  Borrower will pay the Liabilities secured by this Agreement.
2.  Borrower is or will become the owner of the Collateral free from any liens, encumbrances or security interests, except for the security interest granted hereby and existing liens disclosed to the Secured Party in writing, and will defend the Collateral against all claims and demands of all persons at any time claiming any interest in it.
3.  Borrower will keep the Collateral free of liens, encumbrances and security interests, maintain it in good repair, not use it illegally and exhibit it to the Secured Party upon demand.
4.  Borrower will keep the Collateral insured at Borrower's expense against substantial risk of damage, destruction or theft in an amount at least equal to the unpaid balance of the Liabilities, with loss payable to the Security Party, and the Borrower will deliver such policies to the Secured Party upon request.
5.  Borrower will not sell or offer to sell or otherwise transfer the Collateral, nor change the location of the Collateral from or within the state of the Borrower, without the written consent of the Secured Party, except in the ordinary course of business.
6.  Borrower will pay promptly when due all taxes and assessments upon the Collateral, or for its use or operation.
7.  No financing statement covering all or any part of the Collateral or any proceeds is on file in any public office, and at the request of the Secured Party, Borrower will join with the Secured Party in executing one or more financing statements in form satisfactory to Secured Party and will pay the cost of filing them in all public offices wherever deemed by Secured Party to be necessary or desirable.
8.  Borrower will immediately notify the Secured Party in writing, as the address below, of any name change, address or business organization changes.
9.  Borrower will provide any information that Secured Party may reasonably request, and will permit the Secured Party to inspect and copy its books and records during normal business hours.

<u>Default.</u>  Borrower shall be in default under this Security Agreement upon the occurrence of any of the following:

1.  Failure to observe and perform any of the terms and conditions of this Security Agreement.
2.  Any warranty, representation or statement made or furnished to the Secured Party is found to be untrue in any material respect.
3.  The death, dissolution, termination of existence, suspension of business or insolvency of Borrower, or the appointment of a receiver for any part of the property of Borrower, or the making of an assignment for the benefit of creditors by Borrower, or the commencement of bankruptcy or insolvency proceedings by or against Borrower, or the other inability of Borrower to pay its debts as they mature.
4.  The loss, theft, damage, destruction, sale or encumbrance of the Collateral.
5.  The entry, placement or issuance of any judgment, levy, lien, writ of attachment, writ of garnishment, writ of execution or similar process, against Borrower or any of Borrower's property.
6.  The Secured Party shall deem itself insecure in good faith believing that the prospect of payment of Liabilities or performance under this Security Agreement is impaired.
7.  Any event which results or could result in the acceleration of the maturity of any indebtedness of Borrower to the Secured Party or to others under any note, indenture, agreement or undertaking.

Upon Default, the Liabilities shall become due and payable immediately, without notice, unless the Secured Party shall otherwise elect.  The Secured Party shall have the rights and remedies provided by law or this Agreement, including, but not limited to:  1) the right to require Borrower to assemble the Collateral and make it available to the Secured Party at a place to be designated by the Secured Party which is reasonably convenient to both parties; 2) the right to take possession of the Collateral with or without demand and with or without due process of law; and 3) the right to sell or dispose of the collateral and distribute the proceeds according to the law.  In connection with the right of the Secured Party to take possession of the Collateral, the Secured party may take possession of any other items of property temporarily for Borrower

Page 13

-2-

without liability on the part of the Secured Party.  Any requirement of reasonable notice shall be met if Secured Party sends notice to the Borrower at least five days prior to the date of sale, disposition or other event giving rise to the requested notice. Borrower shall be liable for any deficiency remaining after disposition of the Collateral.

<u>Miscellaneous Provisions.</u>

    1.  Where the Collateral is located at, used in or attached to a facility leased by Borrower, Borrower will obtain from the lessor a consent to the granting of the Security Interests hereunder and a subordination of the Lessor's interest in any of the Collateral, in a from acceptable to the Secured party.

    2.  No delay on the part of the Secured Party in the exercise of any right or remedy shall operate as a waiver, no single or partial exercise by Secured Party or any right or remedy shall preclude any further exercise thereof or the exercise of any other right or remedy, and no waiver or indulgence by Secured Party of any default shall be effective unless in writing and signed by the Secured Party, nor shall a waiver on one occasion be construed as a bar to, or waiver of, any right on any future occasion.

    3.  All rights of Secured Party shall inure to the benefit of Secured party's successors and assigns, and all obligations of the Borrower shall bind Borrower's heirs, personal representatives and successors.  In the absence of the express written consent of the Secured Party, this Agreement and the rights and obligations hereunder may not be assigned.  If there is more than one Borrower, the obligations hereunder are joint and several.

    4.  The terms and provisions of this Agreement shall be governed by the laws of the State of Michigan.

    5.  Until payment of the Liabilities is completed, Borrower grants the Secured Party, its officers, employees or agents the right at any time to inspect the Collateral and Borrower's books and records.  Borrower will furnish Secured Party, at its demand, reports regarding the Collateral in such form and detail as are satisfactory to the Secured Party.

    6.  If any provision of this Agreement is invalid for any reason, it shall be ineffective only to the extent of its invalidity, and the remaining provisions shall be valid and effective.

    7.  At its option, Secured Party may, but shall be under no duty or obligation to discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Collateral, pay for insurance on the Collateral and pay for the maintenance and preservation of the Collateral, and Borrower agrees to reimburse Secured Party on demand for any payment made or any expense incurred by Secured Party, with interest at the maximum legal rate.  The Secured Party is not obligated to maintain or preserve the Collateral.

    8.  This Agreement represents the entire understanding between the parties with respect to the issues covered hereunder and it expressly supersedes any and all oral agreements of any kind with respect to these matters.  This Agreement may be modified only by a subsequently executed written agreement, signed by both of the parties.

IN WITNESS WHEREOF, the parties hereby execute this Agreement on this, the _____15th_____ day of ____October__, 2002.
LICENSOR:

ON THE MOVE, INC., a Michigan Corporation

BY: _____
Kirk W. Nash, its President

LICENSEE:
Trucknology, Inc., a New York Corporation

BY: _____
                               its VPacS

Drafted by:
James P. Frederick
Frederick & Frederick, P.C.
15557 Levan Road
Livonia, MI  48154
(313) 464-2232

Page 14

## GUARANTEE

For value received, the undersigned unconditionally guarantees to "On The Move, Inc.", a Michigan Corporation (hereafter referred to as Lessor) the performance of   Truckology, Inc.   , a New York Corporation   (hereafter referred to as Lessee), and all representations, warranties, promises, covenants and indemnities of Lessee provided in a certain Sales Agreement/Lease dated   October 15, 2002   , documenting the sale/lease of a vehicle or vehicles to the Lessee's business located at   Yonkers, NY   .

Any default by the Lessee of any of the terms of said Sales Agreement/Lease and or the accompanying agreements shall obligate the undersigned to pay all damages, costs and reasonable expenses that Lessor may incur or be awarded by reason of default.

This Guarantee by the undersigned is unconditional and Lessor need not exhaust its remedies against, or seek relief or satisfaction from the Lessee prior to exercising such remedies or seeking such relief or satisfaction from the undersigned.

This guarantee shall be binding on the undersigned and upon any of his or her legal representatives and or assigns.

IN WITNESS WHEREOF, the parties hereby execute this Agreement on this, the   15th   day of   October   , 2002.

LICENSOR:

ON THE MOVE, INC., a Michigan Corporation

BY:

Kirk W. Nash, its President

LICENSEE:

Guarantor

Page 15

EXHIBIT A



TRUCK LEASING • SALES & RENTALS • INSURANCE
MOVING SERVICES • ELECTRIC VEHICLES

**KIRK W. NASH**
*President/CEO*

29620 IH 10 West          (800) 645-9949
Boerne, TX 78006          (830) 755-2474
                          Fax (830) 755-2484
                          www.onthemovetrucks.com

2402

## SCHEDULE A

Supplement No. ___3_____ to the Lease Agreement Dated __October 15, 2002_____ ("Lease
Agreement") Between On The Move, Inc. ("Lessor") and __Trucknology, Inc._____ ("Lessee")

VEHICLE INFORMATION:

Year _2002_   Make _Ford_____   Model _E-350 15' ABC w/attic_   V.I.N. _1FDWE35L02HB27928_____

Capitalized Cost $ _33,250.00_____            Lease Term _48_  months
Lease Fee        $ 654.00
Residual Value   $ 6,650.00
Taxes (if any)   $

Total Lease pmt. _$654.00_____         Total funds due at lease inception $ 1,308.00_____

LESSEE INFORMATION

Name _Trucknology, Inc._____
Address 137 Saw Mill River Road
City _Yonkers_____   State _NY_____   Zip Code _10701____

### Acknowledgment and Certification

1. **Lease Vehicles.** Pursuant to the Lease Agreement, all of the terms and conditions of which are incorporated by reference herein, Lessee agrees to lease from Lessor the Lease Vehicles described in this Schedule A, which vehicles Lessee acknowledges have been delivered and accepted by Lessee.

2. **Lease Term; Charges.** The lease term for the Lease Vehicle(s) shall be the number of consecutive months specified for such vehicle(s) in this Schedule A above, and shall commence on the delivery date of the vehicle(s). The first and last payments due under the Lease Agreement are due at the inception of the Lease and all remaining monthly payments (the Lease pmt., described above) are due respectively on the first day of each successive month. The Lessee shall be responsible for any difference between the stated residual value of the vehicle(s), as described above, and the actual value of the vehicle(s) at the end of the lease term.

3. **Certificate of Vehicle Use.** Lessee, _a New York Corporation_____, hereby certifies under penalty of perjury, that (i) Lessee intends that each of the vehicles subject to the Lease Agreement shall be used solely and exclusively in a trade or business of Lessee; and (ii) Lessee has been advised that it will not be treated as the owner of any vehicle subject to the Lease Agreement for Federal income tax purposes.

Dated: _October 15, 2002_____

On The Move, Inc., a Michigan Corporation

By: _____
    Kirk W. Nash
Title: _President_____


Lessee:
Trucknology, Inc., a New York Corporation

By: _____
Title: _V, Pres_____

Page 5

2402

ON THE MOVE INC
29620 IH 10 WEST
BOERNE TX      78006



000627



CERTIFICATE OF TITLE

DEPARTMENT OF MOTION VEHICLES

**EXHIBIT 2**

| Expectation Damages | |
|---|---|
| Past Due Lease Payments | $808,154.00 |
| Past Due Insurance/License Payments | $253,907.23 |
| Past Due Residual (LEV) Payments | $157,209.00 |
| Past Due Other | $1,705.00 |
| Late Fees | $503,473.00 |
| Total | $1,724,448.23 |
| | |
| Expected Lease Payments | $682,824.00 |
| Expected Residual (LEV) Payments | $467,011.00 |
| Total | $1,149,835.00 |
| Grand Total | $2,874,283.23 |

| Consequential, Incidental and Exemplary Damages | |
|---|---|
| Vehicle Recovery | TBD |
| Vehicle Transportation | TBD |
| Vehicle Repair and Make Ready for Re-Lease | TBD |
| Disposal Costs | TBD |
| Storage Fees | TBD |
| Pre-judgment Interest | TBD |
| Exemplary Damages | TBD |
| Attorney Fees | TBD |
| Court Costs and Bond Expense | TBD |
| Grand Total | $0.00 |

| Overall Total | $2,874,283.23 |
|---|---|

**EXHIBIT 3**

00003028.XLS

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | |
| 2 | | | | | | | | |
| 3 | 2624 | 3FDNF65242MA10317 | 02 FORD F-650 DIESEL 26' ABC W | 2002 | FORD | F-650 | $10,929.00 |
| 4 | 2791 | 1FDWE35L93HA15016 | 03 FORD E-350 14' AEROCELL | 2003 | FORD | E-350 | $6,750.00 |
| 5 | 2824 | 1FDWE35L23HA75185 | 03 FORD E-350 14' AEROCELL | 2003 | FORD | E-350 | $6,750.00 |
| 6 | 2827 | 1FDWE35L83HA15055 | 03 FORD E-350 14' AEROCELL | 2003 | FORD | E-350 | $6,750.00 |
| 7 | [redacted] | | | | | | |
| 8 | [redacted] | | | | | | |
| 9 | 3235 | 1FDSE35L63HB77202 | 03 FORD E-350 12' SRW | 2003 | FORD | E-350 | $6,660.00 |
| 10 | 3876 | 1FTRE1429HA42892 | 02 FORD E-150 CARGOVAN | 2002 | FORD | E-150 | $4,285.00 |
| 11 | 3879 | 1FDWE35L24HA69727 | 04 FORD E-350 | 2004 | FORD | E-350 | $6,750.00 |
| 12 | 4055 | 1FDXE45S94HA27546 | 04 FORD E-450 16' ROCKPORT W/LIFT | 2004 | FORD | E-450 | $7,100.00 |
| 13 | 4054 | 1FDXE45S64HA27542 | 04 FORD E-450 16' ROCKPORT W/LIFT | 2004 | FORD | E-450 | $7,100.00 |
| 14 | 4328 | 1FTSW21572EA48019 | 05 FORD F-250 SNOW PLOW | 2005 | FORD | F-250 | $8,200.00 |
| 15 | 4687 | 5PVNE8JT052S11693 | 05 HINO NE8JT 24' SUPREME | 2005 | HINO | NE8JT | $13,500.00 |
| 16 | 4688 | 5PVNE8JT552S11656 | 05 HINO NE8HT 24' SUPREME | 2005 | HINO | NE8JT | $13,500.00 |
| 17 | 4702 | 2FZACFCT15aU95893 | 05 STERLING ACTERRA 24' MORGAN | 2005 | STERLING | ACTERRA | $13,700.00 |
| 18 | 4703 | 2FZACFCT55AU95900 | 05 STERLING ACTERRA 24' MORGAN | 2005 | STERLING | ACTERRA | $13,700.00 |
| 19 | 4714 | JHBNAGJK351S10123 | 05 HINO NA145 16' MORGAN | 2005 | HINO | NA145 | $9,400.00 |
| 20 | 4736 | JHBNC6JM351S10148 | BODIES | 2005 | HINO | NC185 | $10,800.00 |
| 21 | 4875 | 5PVNE8JT062S12036 | SUPREME W/LIFTGATE | 2006 | TOYOTA | NE26BT HINO | $13,700.00 |
| 22 | [redacted] | 5PVNE8JT462S12041 | SUPREME W/LIFTGATE | 2006 | TOYOTA | NE26BT HINO | $13,700.00 |
| 23 | 4877 | 5PVNE8JT662S11991 | SUPREME W/LIFTGATE | 2006 | TOYOTA | NE26BT HINO | $13,700.00 |
| 24 | 4878 | 1FBSS31L76HA33203 | 06 FORD E-350 WAGON | 2006 | FORD | E-350 | $6,450.00 |
| 25 | 4888 | 1FBSS31L76HA43203 | 06 FORD E-350 VAN | 2006 | FORD | E-350 | $6,550.00 |
| 26 | 4889 | 1GNEK13205J223535 | 06 CHEVROLET TAHOE | 2006 | CHEVROLET | TAHOE | $7,988.00 |
| 27 | 4894 | 1GNEK13265J224334 | 05 CHEVROLET TAHOE | 2005 | CHEVROLET | TAHOE | $7,988.00 |
| 28 | 4895 | 1GNDT13S452382922 | 05 CHEVROLET TRAILBLAZER | 2005 | CHEVROLET | TRAILBLAZER | $6,015.00 |
| 29 | 4896 | 2CNDL23F356206542 | 05 CHEVROLET EQUINOX | 2005 | CHEVROLET | EQUINOX | $5,320.00 |
| 30 | 4898 | 2CNDL23F356207173 | 05 CHEVROLET EQUINOX | 2005 | CHEVROLET | EQUINOX | $5,320.00 |
| 31 | 4899 | 2CNDL23F356207173 | 05 CHEVROLET EQUINOX | 2005 | CHEVROLET | EQUINOX | $5,320.00 |
| 32 | 4975 | 5PVNE8JT762S12034 | 06 HINO 268 24' SUPREME | 2006 | HINO | 268 | $13,700.00 |
| 33 | 4975 | | | HINO | | | |

00003028.XLS

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 34 | 4997 | | 1FDWE35L45HB48821 | 05 FORD E-350 14' AEROCELL | 2005 | FORD | E-350 | $6,800.00 |
| 35 | 4999 | | 1FDWE35L15HB44161 | 05 FORD E-350 14' AEROCELL | 2005 | FORD | E-350 | $6,800.00 |
| 36 | 5002 | | 1FDWE35L16HA32559 | 06 FORD E-350 14' AEROCELL | 2006 | FORD | E-350 | $6,800.00 |
| 37 | 5003 | | 1FDWE35L16HA32560 | 06 FORD E-350 14' AEROCELL | 2006 | FORD | E-350 | $6,800.00 |
| 38 | 5004 | | 1FDWE35L36HA32561 | 06 FORD E-350 14' AEROCELL | 2006 | FORD | E-350 | $6,800.00 |
| 39 | 5005 | | 1FDWE35L56HA32562 | 06 FORD E-350 14' AEROCELL | 2006 | FORD | E-350 | $6,800.00 |
| 40 | | | | | | | | |
| 41 | | | | | | | | |
| 42 | 5012 | | 1FDSE35L76HA76402 | 06 FORD E-350 12' AEROCELL SRW | 2006 | FORD | E-350 | $6,550.00 |
| 43 | 5013 | | 1FDSE35L96HA76403 | 06 FORD E-350 12' AEROCELL SRW | 2006 | FORD | E-350 | $6,550.00 |
| 44 | 5058 | | 5PVNE8JT962S12049 | 06 HINO 268 24' SUPREME | 2006 | HINO | 268 | $13,700.00 |
| 45 | 5186 | | 1FDSE35LX6HB14446 | 06 FORD E-350 12' UNICELL SRW | 2006 | FORD | E-350 | $6,550.00 |
| 46 | | | | | | | | |
| 47 | | | | | | | | |
| 48 | 6030 | | 5PVND8JT962S10336 | 06 HINO 238 20' KIDRON | 2006 | HINO | 238 | $12,990.00 |
| 49 | 6031 | | 5PVND8JT382S10395 | 06 HINO 238 12' KIDRON | 2006 | HINO | 238 | $12,990.00 |
| 50 | 6032 | | 5PVNE8JV562S50086 | 06 HINO 268 26' KIDRON | 2006 | HINO | 268 | $14,500.00 |
| 51 | | | | | | | | |
| 52 | | | | | | | | |
| 53 | 6043 | | 1FDXE45S15HA46695 | 05 FORD E-450 17' UNICELL | 2005 | FORD | E-450 | $7,400.00 |
| 54 | 6044 | | 1FDXE45S85HA31891 | 05 FORD E-450 17' UNICELL | 2005 | FORD | E-450 | $7,400.00 |
| 55 | 6045 | | 1FDXE45S65HA31906 | 05 FORD E-450 17' UNICELL | 2005 | FORD | E-450 | $7,400.00 |
| 56 | 6046 | | 1FDXE45S05HA46705 | 05 FORD E-450 17' UNICELL | 2005 | FORD | E-450 | $7,400.00 |
| 57 | 6047 | | 1FDXE45SX5A31911 | 05 FORD E-450 17' UNICELL | 2005 | FORD | E-450 | $7,400.00 |
| 58 | 6048 | | 1FDXE45S75HA45684 | 05 FORD E-450 17' UNICELL | 2005 | FORD | E-450 | $7,400.00 |
| 59 | 6049 | | 1FDXE45S45HA45707 | 05 FORD E-450 17' UNICELL | 2005 | FORD | E-450 | $7,400.00 |
| 60 | 6050 | | 1FDXE45S35HA31913 | 05 FORD E-450 17' UNICELL | 2005 | FORD | E-450 | $7,400.00 |
| 61 | 6051 | | 1FDXE45SX5HA31889 | 05 FORD E-450 17' UNICELL | 2005 | FORD | E-450 | $7,400.00 |
| 62 | | 49 Vehicles | | | | | Total | $427,525.00 |
| 63 | | | | | | | | |
| 64 | | | | | | | | |
| 65 | | | | | | | | |
| 66 | | | | | | | | |