UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
On The Move, Inc.,                                :
                                                  :
                              Plaintiff,          :   08 Civ. 2533 (DAB) (JCF)
                                                  :
        v.                                        :
                                                  :
Trucknology, Inc. a/k/a The Bronx Truck Rental Corp. and :
Eugene Greenbaum,                                 :
                                                  :
                              Defendants.         :
-------------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S *EX PARTE* MOTION FOR AN ORDER OF SEIZURE AND
TEMPORARY RESTRAINING ORDER**

STERN TANNEBAUM & BELL LLP
380 Lexington Avenue, Suite 3600
New York, NY 10168
(212) 792-8484
(212) 792-8489 (facsimile)
Attorneys for Plaintiff

# TABLE OF CONTENTS

 Page

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT .....................................................................................................1

FACTS ............................................................................................................................................2

  The Security Agreements ..................................................................................................4

  Trucknology's and Greenbaum's Wrongful
  Refusal to Return the Trucks ............................................................................................. 5

ARGUMENT ..................................................................................................................................6

POINT I. PLAINTIFF IS ENTITLED TO AN *EX PARTE* ORDER OF SEIZURE .................. 6

A. OTM Clearly Meets The Requirements For An Order
  Of Seizure Under CPLR 7102 ........................................................................................... 6

B. OTM Can Show Irreparable Harm And A Likelihood
  Of Success On The Merits ..................................................................................................9

  1. OTM Will Be Irreparably Harmed If The Order Of Seizure Is Not Granted .........9

  2. OTM Has Shown A Likelihood Of Success On The Merits .................................. 9

C. The Order Of Seizure Should Be Granted *Ex Parte* ........................................................9

POINT II. PLAINTIFF IS ENTITLED TO A
  TEMPORARY RESTRAINING ORDER ..........................................................................12

CONCLUSION ...........................................................................................................................12

## TABLE OF AUTHORITIES

**PAGE**

AXA Corporate Solutions Insurance Co. v. Lumbermens Mutual Casualty Co.,
  2005 U.S. Dist. LEXIS 14268 (S.D.N.Y. July 13, 2005) ..............................................10

Amplicon, Inc. v. Information Management Technologies Corp., 1999 U.S. Dist.
  LEXIS 13464 (S.D.N.Y. Aug. 31, 1999) ........................................................................8

Atlantic Bank of N.Y. v. Metropolitan Food Group, LLC, 2003 U.S. Dist. LEXIS
  4164 (S.D.N.Y. March 20, 2003) ....................................................................................8

Dubied Machinery Co. v. Vermont Knitting Co., 739 F. Supp. 867 (S.D.N.Y.
  1990) ..............................................................................................................................10

Honeywell Information Systems, Inc. v. Demographic Systems, Inc., 396 F.
  Supp. 273 (S.D.N.Y. 1975) .............................................................................................6

LoPresti v. Terwilliger, 126 F.3d 34 (2d Cir. 1997) ..............................................................11

Paxall Circle Machinery v. My Brands, Inc., 1989 U.S. Dist. LEXIS 8680
  (S.D.N.Y July 27, 1989) .................................................................................................9

### STATUTES

Fed. R. Civ. P. 64 ....................................................................................................................6

N.Y. CPLR: 7102 ............................................................................................................ passim

Plaintiff On The Move, Inc. ("Plaintiff" or "OTM") respectfully submits this memorandum of law in support of its motion pursuant to N.Y. CPLR § 7102 for an *ex parte* order of seizure ("Order of Seizure") respecting 49 trucks, which are being unlawfully held by defendants, Trucknology, Inc. a/k/a The Bronx Truck Rental Corp. ("Trucknology") and Eugene Greenbaum ("Greenbaum") (collectively, "Defendants").[1] Again pursuant to N.Y. CPLR § 7102, OTM also moves for a temporary restraining order (the "TRO") during the pendency of this motion.

## PRELIMINARY STATEMENT

This *ex parte* motion for an Order of Seizure and a TRO stems from Defendants' wrongful refusal to return chattel, that is 49 trucks (the "Trucks"), owned by Plaintiff, despite repeated proper demand that they do so. The Trucks have an aggregate value of $427,525. The motion comes after OTM attempted, over the course of several months, to amicably resolve this matter without resort to the Court. Now that these efforts have unequivocally failed, OTM is properly and rightfully seeking to have the Court direct the United States Marshall for the Southern District of New York (the "U.S. Marshall"), pending further order of the Court, to seize and retain or otherwise secure the Trucks, most of which (or at least many of which), as detailed below and in the accompanying affidavit of Mark A. Ulfig ("Ulfig Affidavit"), are very likely located at defendant Trucknology's principal place of business, 1130 Zerega Avenue, Bronx, N.Y. 10462 (the "Premises") and another location it maintains at 137 Saw Mill River Road, Yonkers, New York 10701 (the "Yonkers Premises").

OTM also requests that if the Trucks are not delivered to the U.S. Marshall, the U.S. Marshall be authorized to break open, enter and search both Premises for the Trucks.

Further, particularly given the mobile nature of the chattel at issue, OTM also respectfully requests that the Court issue a TRO during the pendency of the Motion, restraining and enjoining Defendants, and anybody or entity acting on behalf of or in concert with Defendants, from operating, concealing, parting with, disposing of or transferring the Trucks.

## FACTS

The relevant facts are more fully set forth in the accompanying Ulfig Affidavit sworn to on April 7, 2008, and the exhibits annexed thereto, to which the Court's attention is respectfully directed. Ulfig is the President and Chief Executive Officer of OTM. The facts are summarized herein for the Court's convenience.

OTM and Trucknology entered into Lease Agreements (or individually "Lease Agreement") from 2002 through 2006 pursuant to which Trucknology leased the Trucks from OTM, designated and described on Schedule "A" to each Lease Agreement. (Ulfig Affidavit ¶ 14.)

Each Schedule "A" to the Lease Agreements sets forth OTM's account number, a description of each Truck, each Truck's vehicle identification number ("VIN"), each Truck's residual value, the particular lease term, monthly lease payment amount and other details of the particular lease. (Ulfig Affidavit ¶ 15.)

The Lease Agreements were executed each time Trucknology leased Trucks. The relevant Lease Agreements, including the Schedules "A," which are clearly designated, are attached hereto as Exhibit D. (The Lease Agreements and their enclosures are sometimes referred to as "Lease Agreement Packages"). (Ulfig Affidavit ¶ 16.)

Exhibit D also contains copies of the relevant titles (clearly designated), in OTM's name, demonstrating OTM's ownership of the Trucks.[1] (Ulfig Affidavit ¶ 16.)

Greenbaum, the President of Trucknology, executed a personal guarantee (the "Personal Guarantee") with respect to Trucknology's underlying obligations under each of the Lease Agreements. (Copies of the Personal Guarantees are included within the Lease Agreement Packages.) (Ulfig Affidavit ¶ 17.)

Under the terms of the Lease Agreements, Trucknology was obligated to pay monthly lease payments to OTM, as well as pay insurance and registration fees and taxes, and any other operating expenses, as more particularly described in each Lease Agreement. (Ulfig Affidavit ¶ 18.)

Despite proper repeated demand, beginning in or about November 2006, Trucknology and Greenbaum failed to pay certain lease payments as required by the Lease Agreements. (Ulfig Affidavit ¶ 19.)

As stated, and as more fully set forth in the summary of damages (attached to the Complaint as Exhibit 2), past due and unpaid lease payments, as well as past due insurance, license and residual ("LEV") payments, late fees and expected lease payments and expected LEV payments total $2,874,283. (Ulfig Affidavit ¶ 20.)

Trucknology's and Greenbaum's failure to pay the agreed-upon lease payments and other related charges constitutes a material default of each of the Lease Agreements. (Ulfig Affidavit ¶ 21.)

---

[1] The Lease Agreement for file number 2791 is missing, but both the relevant Schedule A and title, setting forth key terms of the lease and demonstrating OTM's ownership, are annexed to the Ulfig Affidavit as Exhibit D. Moreover, all of the Lease Agreements contain identical operative provisions.

3

As a result of these defaults, OTM provided written notice to Trucknology that it was terminating the Lease Agreements pursuant to section 13 of the Lease Agreements. (Ulfig Affidavit ¶ 22.)

**The Security Agreements**

On the same date of each Lease Agreement, Trucknology and Greenbaum purchased from OTM certain items of movable and intellectual property referred to and more particularly described on the relevant Bills of Sale and Schedule "A" thereto. (A sample copy of a Bill of Sale is included within the Lease Agreement Packages.) (Ulfig Affidavit ¶ 23.)

Specifically, OTM provided Trucknology with the following:

1. User's Marketing Material Kit
2. Accounting Ledgers and Journals
3. Training Materials
4. Hand Truck
5. Form Rental Agreements (5 Books)
6. 12 Protective Blankets
7. Safety Qualification Forms (1 Pkg. of 125).

(Ulfig Affidavit ¶ 24.)

To secure the repayment of all of Trucknology's and Greenbaum's indebtedness to OTM, Trucknology and Greenbaum granted OTM a security interest in the movable and intellectual property described on Schedule "A" to the Bills of Sale, as well as a security interest in the Trucks (the "Collateral"), as set forth in security agreements ("Security Agreements") included with each Lease Agreement Package. (Ulfig Affidavit ¶ 25.)

Each Security Agreement provided that Trucknology and Greenbaum would be in default under the Security Agreement at the occurrence of any event that would accelerate the indebtedness of Trucknology and Greenbaum as the secured party under any note, indenture,

4

agreement or undertaking, and further provided OTM with the right to exercise on the Collateral. (Ulfig Affidavit ¶ 26.)

The default of Trucknology and Greenbaum under the Lease Agreements as set out above operates as a default ("Default") under section 7 of the relevant Security Agreements, and therefore OTM has a right possession of the Collateral, in preference and priority over all other parties. (Ulfig Affidavit ¶ 27.)

### Trucknology's and Greenbaum's Wrongful Refusal to Return the Trucks

Following OTM's termination of the Lease Agreements, discussed above, it demanded that Trucknology and Greenbaum return any Trucks in its possession or control to OTM. (Ulfig Affidavit ¶ 28.)

As stated, OTM's efforts to settle the instant dispute have failed and Defendants have repeatedly ignored OTM's proper demand that they return the Trucks. (See Ulfig Affidavit ¶¶ 5, 10, 29.)  Accordingly, OTM commenced this action by filing a Summons and Complaint. The Complaint sets forth claims for replevin, injunctive relief, breach of contract, breach of guaranty, conversion and declaratory relief. (Ulfig Affidavit Exhibit C.)

It lies within the power of Trucknology and Greenbaum to conceal, part with or dispose of or transfer the Trucks, or materially impair their value, during the pendency of this suit. Again, given the mobile nature of the Trucks and Trucknology's and Greenbaum's repeated refusal to return the Trucks, OTM reasonably fears this might be done. Therefore, an Order of Seizure and TRO are necessary to protect OTM's rights. (Ulfig Affidavit ¶ 29.)

5

## ARGUMENT

### POINT I

### PLAINTIFF IS ENTITLED TO AN *EX PARTE* ORDER OF SEIZURE

Plaintiff OTM clearly meets the requirements for an Order of Seizure under CPLR 7102, and can clearly show irreparable harm and a likelihood of success on the merits, not just on its claim for replevin, which is the critical issue, but on its other claims as well. OTM also meets the necessary criteria to show that the Order should be granted on an *ex parte* basis.

**A.     OTM Clearly Meets The Requirements For An Order Of Seizure Under CPLR 7102**

Fed. R. Civ. P. 64 provides, in pertinent part, that:

> At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held. . . . The remedies thus available include . . . replevin . . . and other corresponding or equivalent remedies, however designated and regardless of whether by state procedure the remedy is ancillary to an action or must be obtained by an independent action.

See Honeywell Information Systems, Inc. v. Demographic Systems, Inc., 396 F. Supp. 273 (S.D.N.Y. 1975).

Specifically, Article 71 of the New York Civil Practice Law and Rules ("CPLR"), rooted in the common-law action of replevin, governs the recovery of chattel. CPLR § 7101 provides that an action may be brought to determine the right to possession of a chattel, and also provides a separate, quasi-provisional remedy, an order of seizure, that may be issued in connection with the action brought to try the right to possession. CPLR § 7102(d) explains that, "[u]pon presentation of the affidavit [discussed in CPLR § 7102(c)] and undertaking and upon finding that it is probable the plaintiff will succeed on the merits and the facts are as stated in the

6

affidavit, the court may grant an order directing the sheriff of any county where the chattel is found to seize the chattel described in the affidavit."

The Court also may direct that "if the chattel is not delivered to the sheriff, he may break open, enter and search for the chattel in the place specified in the affidavit." CPLR 7102(d)(1).

Specifically, the supporting affidavit must contain the following:

1. the plaintiff is entitled to possession by virtue of facts set forth;
2. the chattel is wrongfully held by the defendant named;
3. whether an action to recover the chattel has been commenced, the defendants served, whether they are in default, and, if they have appeared, where papers may be served upon them;
4. the value of each chattel or class of chattels claimed, or the aggregate value of all chattels claimed;
5. if the plaintiff seeks the inclusion in the order of seizure of a provision authorizing the sheriff to break open, enter and search for the chattel, the place where the chattel is located and facts sufficient to establish probable cause to believe that the chattel is located at that place;
6. no defense to the claim is known to the plaintiff; and
7. if the plaintiff seeks an order of seizure without notice, facts sufficient to establish that unless such order is granted without notice, it is probable the chattel will become unavailable for seizure by reason of being transferred, concealed, disposed of, or removed from the state, or will become substantially impaired in value.

The Ulfig Affidavit, which is summarized above, establishes the following: (1) OTM owns the Trucks, both based on Ulfig's sworn statement and on the titles and other documents annexed to his Affidavit that clearly demonstrate OTM's ownership; (2) despite just demand, Defendants have refused to return the Trucks; (3) an action to recover the chattel (the Trucks) has been commenced and Defendants will timely be served with process; (4) the aggregate value of the Trucks is $427,525; (5) based on the Lease Agreements and the observations of ALSCO (OTM's agent), it is probable that the Trucks, or at least certain of them, are located at the Premises and the Yonkers Premises; (6) Ulfig, who is the person at OTM primarily responsible

for OTM's dealings with Defendants, knows of no defenses either Defendant might have to the claims asserted herein, and Trucknolgy specifically waived its right to assert any such defenses under the Lease Agreements; (7) Plaintiff seeks the Order of Seizure without notice because, based on Defendants blatant, groundless and continuing refusal to return the Trucks, which are by their very nature mobile, OTM believes it is probable the chattel will become unavailable for seizure by reason of being transferred, concealed, disposed of, or removed from New York State. (Ulfig Affidavit ¶ 5-10, 13, 16; Exhibits A - D.)

Therefore, based upon the Ulfig Affidavit, it is clear that OTM has satisfied CPLR § 7102, and an Order of Seizure should be granted.2  See Atlantic Bank of N.Y. v. Metropolitan Food Group, LLC 2003 U.S. Dist. LEXIS 4164 (S.D.N.Y. March 20, 2003) (where plaintiff bank sought order of seizure of collateral pledged to secure promissory note, Court directed U.S. Marshall to seize and retain or otherwise secure, pending further order of the Court, all inventory, fixtures and furniture located at relevant premises and directed plaintiff to post bond); Amplicon, Inc. v. Information Management Technologies Corp., 1999 U.S. Dist. LEXIS 13464 (S.D.N.Y. Aug. 31, 1999) (where plaintiff compiled with CPLR § 7102, the Court granted its motion for an order of seizure of property, and further ordered that if the property were not delivered to the Sheriff, the Sheriff was authorized to break open, enter and search the relevant premises for the property, upon condition of plaintiff's posting a bond pursuant to CPLR § 7102(e) ("[t]he condition of the undertaking shall be that the surety is bound in a specific amount, not less than twice the value of the chattel stated in the plaintiff's affidavit . . . ")

---

2 OTM also will file an undertaking with the Court in the amount set by the Court (which pursuant to CPLR 7102 must be at least twice the value of the Trucks ($427,525)), and will move to confirm the *ex parte* Order of Seizure within five (5) days of its being granted the relief sought, upon notice to the Defendants, pursuant to N.Y. CPLR § 7102 (d)(4).

**B.     OTM Can Show Irreparable Harm And A Likelihood of Success On The Merits**

New York courts have applied the same criteria to replevin actions as used in deciding whether preliminary injunction relief is warranted, that is, whether plaintiff has demonstrated (1) irreparable harm and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them fair ground for litigation, plus a balance of hardships tipping decidedly in its favor. Paxall Circle Machinery v. My Brands, Inc., 1989 U.S. Dist. LEXIS 8680, at ** 7-8 (S.D.N.Y July 27, 1989).

   1.     **OTM Will Be Irreparably Harmed If The Order of Seizure Is Not Granted**

Because Defendants have wrongfully refused to return the Trucks, OTM has been deprived of their use, including the opportunity to re-sell them to recoup some of their value. Furthermore, as stated in the Ulfig Affidavit, Trucknology has failed among other things, to make lease payments or insure the Trucks for more than a year. Therefore, OTM has suffered, and will continue to suffer, irreparable harm until it has re-gained possession of the Trucks. See Paxall Circle Machinery, 1989 U.S. Dist. LEXIS 8680, at *8 (irreparable harm demonstrated where plaintiff was not able to sell its machine to another purchaser not use it itself and defendant had not made payments for over a year).

   2.     **OTM Has Shown A Likelihood Of Success On The Merits**

"A replevin action may be maintained only by one who has a superior possessory right to the chattel, although he need not prove that the defendant has no title to the chattel." Paxall Circle Machinery., 1989 U.S. Dist. LEXIS 8680 at **4-5, citing, inter alia, Honeywell Information Systems, Inc. v. Demographic Systems, Inc., supra.

Here, OTM has a superior possessory right to the chattel, as it owns the Trucks, as is clearly demonstrated by the Ulfig Affidavit, including Exhibit D thereto. By demonstrating its

9

superior possessory right to the Trucks, OTM has shown a likelihood of success on the merits on its replevin claim. See Dubied Machinery Co. v. Vermont Knitting Co., 739 F. Supp. 867 (S.D.N.Y. 1990) (granting partial judgment on the pleadings as to cause of action for replevin regarding a knitting machine, noting that defendant did not assert any title or right to the machine except as to security for a counterclaim, and holding that in an action for replevin "'the issue is strictly whether plaintiff or defendant has the superior right'").

OTM also is likely to succeed on its claims grounded in breach of contract, conversion, and declaratory and injunctive relief.

Under New York law, to prevail under New York law on a breach of contract claim, the plaintiff must allege and prove (i) the existence and basic terms of a contract, (ii) plaintiff has performed their obligations under the contract, (iii) defendant breached their obligations, and (iv) resulting damage to the plaintiff. AXA Corporate Solutions Ins. Co. v. Lumbermens Mut. Cas. Co., 2005 U.S. Dist. LEXIS 14268, at *12 (S.D.N.Y. July 13, 2005).

OTM has demonstrated the existence and basic terms of the contracts, the Lease Agreements, that by supplying the Trucks it has fulfilled its obligations thereunder, and by failing, inter alia, to make lease payments, insurance payments and other payments due, and refusing to return the Trucks, defendant Trucknology has materially breached its obligations under the Lease Agreements. Greenbaum, as guarantor, is responsible for those breaches under the Guarantees. OTM also has demonstrated that it has been damaged by Defendants breaches, based both on payment defaults, and also by the refusal to return the Trucks. Therefore, it is highly likely Plaintiff succeed on its breach of contract claim.

Alternatively, OTM should prevail on its claim for conversion. Under New York law, "[c]onversion occurs when a defendant exercises unauthorized dominion over personal property

10

in interference with a plaintiff's legal title or superior right of possession." <u>LoPresti v. Terwilliger</u>, 126 F.3d 34, 41 (2d Cir. 1997) (quotation omitted). As discussed with respect to its claim for replevin, OTM has demonstrated its legal ownership <u>and</u> superior right of possession to the Trucks, which are of course "specific, identifiable, property," and that Defendants have exercised unauthorized dominion over the same. (<u>See</u> Ulfig Affidavit ¶¶ 5-10, Exhibit D.)

Finally, OTM clearly has a legal right to protect its property, and given the continuing nature of the utter disregard of OTM's ownership of the Trucks, it is entitled to a permanent injunction, as well as a declaration of its rights, to prevent further offenses by Defendants as regards the Trucks and the other collateral secured by the Security Agreements.

### C.   The Order of Seizure Should Be Granted *Ex Parte*

The Order of Seizure may issue without notice to Defendants if "it is probable the chattel will become unavailable for seizure by reason of being transferred, concealed, disposed of, or removed from the state, or will become substantially impaired in value." CPLR 7102(a)(3). OTM makes this motion *ex parte* based on the mobile nature of the Trucks, and because despite proper repeated requests, Defendants have repeatedly refused to return the Trucks, even though there is no question that OTM owns the Trucks and has superior rights to them. Therefore, it is probable that if Defendants are provided with notice of the Order of Seizure, the Trucks will become unavailable for seizure by reason of being transferred, concealed, disposed of or removed from New York State.

## POINT II

## PLAINTIFF IS ENTITLED TO A
## TEMPORARY RESTRAINING ORDER

CPLR § 7102(d)(2) provides:

> Upon a motion for an order of seizure, <u>the court, without notice to the defendant, may grant a temporary restraining order that the chattel shall not be removed from the state if it is a vehicle, aircraft or vessel or, otherwise, from its location, transferred, sold, pledged, assigned or otherwise disposed of or permitted to become subject to a security interest or lien until further order of the court.</u> Unless the court otherwise directs, the restraining order does not prohibit a disposition of the chattel to the plaintiff. Disobedience of the order may be punished as a contempt of court.

(Emphasis added.)

Here, the chattel at issue is the 49 trucks, "vehicles" covered by CPLR § 7102(d)(2), which by their very nature, can be easily moved and transported outside of the State. Plaintiff therefore respectfully requests that the Court issue the TRO as absent a TRO, Defendants clearly can, and very well may, remove the Trucks from the State or conceal them from Plaintiff. Under such circumstances, a TRO is plainly warranted.

## CONCLUSION

For all of the foregoing reasons, Plaintiff OTM respectfully submits that the instant motion for an *ex parte* Order of Seizure and a TRO be granted in all respects.

Dated: New York, New York
April 10, 2008

STERN TANNENBAUM & BELL LLP

By: _____
David S. Tannenbaum (DT 1196)
Dtannenbaum@sterntannenbaum.com
Rosemary Halligan (RH 6650)
Rhalligan@sterntannenbaum.com
380 Lexington Avenue
Karen S. Frieman (KF 9204)
Kfrieman@sterntannenbaum.com
New York, New York 10168
(212) 792-8484
(212) 792-8489 (facsimile)
Attorneys for Plaintiff On The Move, Inc.

{00002817.DOC v 3}

13